199 N.J. Super. 29 (1985)
488 A.2d 235
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILFREDO MIELES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1985.
Decided February 21, 1985.
*31 Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.
Michael Alpart argued the cause for appellant.
Marijean Raffetto Stevens, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney).
The opinion of the court was delivered by MORTON I. GREENBERG, P.J.A.D.
This matter comes on before this court on appeal from a judgment of conviction in a criminal case. The case involves significant statutory construction questions concerning the definition of "handgun" and "firearm" under the New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 et seq. Specifically we must decide whether the instrument used by defendant, a spring action BB pistol, was a handgun as defined in N.J.S.A. *32 2C:39-5(b) and whether it was a firearm within N.J.S.A. 2C:39-1(f). We must further determine whether a finding by a jury that the instrument was a deadly weapon as defined by N.J.S.A. 2C:11-1(c) prior to the amendment of that section by L. 1981, c. 384 may be sustained.
A four-count indictment was returned in Middlesex County charging defendant with armed robbery of Francis J. Casagrande with a deadly weapon, a handgun, N.J.S.A. 2C:15-1 (count 1); unlawfully possessing a handgun without a permit, N.J.S.A. 2C:39-5(b) (count 2); possession of a weapon, the handgun, for the unlawful purpose of using it against Casagrande, N.J.S.A. 2C:39-4(a) (count 3); and aggravated assault on Casagrande by pointing a firearm at him under circumstances manifesting extreme indifference to the value of human life, N.J.S.A. 2C:12-1(b)(4) (count 4). Defendant pleaded not guilty to all charges and a jury trial ensued. The trial started in defendant's presence on December 6, 1982 and continued on December 7 and 8, 1982. On December 7, 1982 defendant who had been free on bail did not appear in court and his attorney could give no explanation for his absence. Accordingly the trial was completed without defendant being present. See R. 3:16. Defendant was convicted on the armed robbery, possession of the handgun without a permit and aggravated assault counts but he was acquitted of possessing the weapon with the unlawful purpose of using it against Casagrande.
Defendant's absence caused a considerable delay in his sentencing. Further it resulted in his bail being forfeited. The case was reactivated, however, after April 29, 1984 when defendant was arrested at the border while attempting to enter the United States from Mexico. Defendant was subsequently sentenced to a term of ten years in prison on the armed robbery count one-third of which was to be served before he was to be eligible for parole. He was sentenced to a concurrent term of three years on the count of possession of a handgun without a permit. The conviction for aggravated assault was merged into the armed robbery count. Two penalties of $25 were imposed *33 for the use of the Violent Crimes Compensation Board. Following defendant's sentencing and incarceration he moved for a new trial and a return of the forfeited bail but these motions were denied. Defendant has appealed from the conviction, the denial of a new trial and the denial of the return of the forfeited bail.
The events leading to defendant's indictment and conviction began on December 15, 1981. The victim, Francis Casagrande, testified that at approximately 6:00 p.m. on that day he left his office in New York City to go to the Harley Hotel for a dinner meeting with some clients. Prior to the dinner Casagrande probably had a few drinks. The meeting ended at about 10:30 or 11:00 p.m. Casagrande then went to another meeting at Figaro's where he had approximately three beers. He left Figaro's at around 3:00 a.m. on December 16, 1981 and at that time hailed a taxicab being operated by defendant. Defendant agreed to take Casagrande to defendant's home in Edison for $50.
Unfortunately all did not go well during the ride. Defendant at one time drove in the wrong direction, an action which angered Casagrande. Eventually, however, the cab reached Casagrande's home and Casagrande then paid defendant with a $50 bill, left the cab and walked almost 100 feet to his house. Defendant also left the cab. He came up to Casagrande, grabbed him by the back of the collar and demanded an additional payment. Casagrande suggested that defendant come into the house and call the taxi company or the police, a suggestion defendant did not accept. Instead defendant took more immediate steps to enforce his demands. He drew a handgun causing Casagrande to raise his hands above his head. Defendant then asked Casagrande where he kept his money. When Casagrande indicated that it was in his right-hand pants pocket defendant put the gun to Casagrande's head and robbed him of the money in the pocket, between $20 and $60. Not surprisingly these events frightened Casagrande.
*34 Following the robbery defendant left the scene. Casagrande then went into his house and called the Edison police to report the robbery. Casagrande's call triggered prompt action. Two Edison policemen almost immediately spotted the cab and arrested defendant. They took a loaded handgun from his inside belt. At that time defendant had $209.33 which included a $50 bill in his possession. Later that morning Casagrande identified the gun as the one defendant had during the robbery.
During the cross-examination of Casagrande defendant's attorney attempted to develop facts concerning how frequently Casagrande returned to New Jersey by cab from New York. He also sought specific information concerning the persons with him in New York. The prosecutions' objection to this testimony on the grounds of relevancy was sustained.
Lieutenant Joseph N. Shirley of the Edison Township Police Department, an expert in the test firing of firearms, testified at the trial. He described the weapon as a pellet gun or BB gun operated by spring action. Shirley said it fired a small projectile called a "BB." Shirley had test-fired the gun and found it to be operable. The prosecutor asked Shirley whether the gun was a firearm under New Jersey law. While Shirley answered that it was, the court then sustained defendant's objection to the question saying it was a question for the judge. The prosecutor did not attempt to pursue this line of questioning further.
Inasmuch as the gun did not fire conventional bullets the case raised issues concerning whether the gun was a "handgun," "firearm" and "deadly weapon" within the contemplation of the New Jersey Code of Criminal Justice. It is evident that Shirley was called because of these issues. The judge in conformity with his ruling during Shirley's testimony charged the jury without objection from defendant that the weapon recovered was a firearm within the definition of firearm in N.J.S.A. 2C:39-1(f). Further the judge told the jury that the robbery was a second degree offense unless defendant was *35 armed with or threatened the immediate use of a deadly weapon in which event the offense was of the first degree. The judge defined deadly weapon and made it clear that the jury would have to determine whether the weapon was deadly. The verdict already described was returned. Defendant has appealed raising the following issues.
(1) The conviction for unlawful possession of a handgun without having obtained a permit (Count Two) must be reversed because a spring-loaded BB gun is not a `Handgun' within the Contemplation of N.J.S.A. 2C:39-5b.
(2) The conviction for aggravated assault (Count Four) must be reversed because defendant did not point a `firearm' at the victim, as contemplated in N.J.S.A. 2C:12-1b(4).
(3) The conviction for first degree robbery (Count 1) must be reversed because the State adduced no evidence to support a finding that defendant used or threatened the immediate use of a `Deadly Weapon.'
(4) The acquittal for possession of a weapon for an unlawful purpose (Count Three) logically negates an essential element required for the conviction on counts one and four of the indictment and those convictions must therefore be reversed.
(5) The trial judge erred in not permitting full cross examination of the alleged victim, the complainant, and the defendant is therefore entitled to a new trial.
(6) Bail should be reinstated.
As we have indicated the principal issues raised on this appeal involve determination of whether the instrument defendant used was a handgun and firearm and whether it could be considered a deadly weapon. These issues though dependent for their resolution on the facts concerning defendant's gun are largely a matter of statutory construction.
The second count of the indictment charged that defendant was in unlawful possession of a handgun contrary to N.J.S.A. 2C:39-5(b) which provides:
Any person who knowingly has in his possession any handgun, including any antique handgun without first having obtained a permit to carry the same as provided in section 2C:58-4, is guilty of a crime of the third degree.
A handgun includes a pistol, revolver or other firearm designed or manufactured to be fired by the use of a single hand. N.J.S.A. 2C:39-1(k). Under the fourth count of the indictment defendant was convicted of violation of N.J.S.A. 2C:12-1(b)(4), *36 which provides that a person is guilty of aggravated assault if he:
Knowingly under circumstances manifesting extreme indifference to the value of human life points a firearm, as defined in section 2C:39-1f., at or in the direction of another, whether or not the actor believes it to be loaded.
Accordingly unless the gun was a "firearm" defendant could not be convicted under either the second or fourth counts of the indictment.[1] Firearm is defined in N.J.S.A. 2C:39-1(f), which provides:
"Firearm" means any hand gun, rifle, shotgun, machine gun, automatic or semi-automatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectable ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances. It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person.
It is evident that N.J.S.A. 2C:39-1(f) divides the types of instruments that are firearms into two categories distinguishable by their method of propelling the item fired. The first sentence of the section provides that firearms include certain instruments which are fired by cartridges, shells, explosives or the igniting of flammable or explosive substances. Inasmuch as the handgun here was not operable by any of these firing methods it was not a firearm within that sentence. However, the second sentence of N.J.S.A. 2C:39-1(f) encompasses other instruments for it includes firearms which eject bullets or missiles by other methods including spring action. But the second sentence though broader than the first sentence with respect to the means of propulsion of the item fired is narrower as to what the instrument may fire. An instrument operated by the propulsion methods in the first sentence will be a firearm if it fires any solid projectable ball, slug, pellet, missile *37 or bullet, or any gas, vapor or other noxious thing. But an instrument within the second sentence must fire a bullet or missile smaller than three-eighths of an inch in diameter with sufficient force to injure a person.
Because the judge indicated that he would decide whether the weapon was a firearm the evidence describing the gun is not extensive. It is however undisputed that the gun operated by spring action, a method of propulsion enumerated in the second sentence of N.J.S.A. 2C:39-1(f). Further defendant at oral argument before us admitted that only small BB's less than three-eighths of an inch in diameter could be fired from the gun, a fact which must have been obvious to the trial judge inasmuch as the gun was in evidence. While there was no testimony that the instrument could fire a BB with sufficient force to injure a person we have no doubt that it could. Surely it could not be seriously contended that if a BB struck a person in the eye he could not be injured. See Pair v. Blakly, 160 N.J. Super. 14, 16 (App.Div. 1978), certif. den. 77 N.J. 509 (1978) ($93,000 verdict for an eye injury from a BB). Accordingly if a "BB" is a missile then defendant's handgun was a firearm. While the New Jersey Code of Criminal Justice does not define "missile," in ordinary understanding it is simply a weapon or object that may be thrown or projected. Webster's Third New International Dictionary (1976) at 1445. Certainly a BB is within that category. Indeed if it is not a missile we cannot conceive of what would be. Consequently we hold that the gun in this case was a firearm within N.J.S.A. 2C:39-1(f).[2]
While we find no direct precedent supporting our result that an instrument of the type involved in this case is a firearm within N.J.S.A. 2C:39-1(f) other cases suggest that we are fully *38 justified in reading N.J.S.A. 2C:39-1(f) literally to so hold.[3] Certainly in weapon cases this court has not been grudging in its definition of firearms. Thus in State v. Gantt, 195 N.J. Super. 114 (App.Div. 1984) we held that an instrument may be regarded as a firearm even though there was no showing that it was operable at the time of the offense. In State v. Bill, 194 N.J. Super. 192, 198 (App.Div. 1984) we held that both loaded and unloaded weapons should be considered to be firearms in prosecutions for aggravated assault under N.J.S.A. 2C:12-1(b)(4) which interdicts the pointing of a firearm at another person. In fact an inoperable or unloaded firearm of the type described in the first sentence of N.J.S.A. 2C:39-1(f) is less of a threat to the victim of a crime than a loaded BB pistol. Further from the viewpoint of the victim caught in the stress of a robbery the threat of a BB pistol is likely to seem equal to the threat from a traditional firearm. Indeed we do not think the victim will discern the difference. This case well illustrates the point. It cannot be seriously contended that Casagrande at 3:00 a.m. should have recognized that defendant's instrument fired only BB's. We also observe that by using the handgun defendant was able to effectuate the exact result he intended, the submission of Casagrande to the robbery.
We are aware that under our construction certain licensing and other regulatory provisions of Chapter 58 of the New Jersey Code of Criminal Justice are applicable to BB guns. One example is that a person under 18 years of age will not be permitted to acquire such a weapon. N.J.S.A. 2C:58-6.1. While we do not know how these laws are currently applied to such weapons we see no reason to be different about such a consequence. If as a result of this opinion the distribution of weapons is inhibited the public interest will certainly not suffer.
*39 Our determination that defendant's instrument was a firearm resolves the statutory construction issue raised by defendant under N.J.S.A. 2C:12-1(b)(4) for that section forbids the pointing of a firearm at a person in the circumstances it sets forth. However there is a further question under N.J.S.A. 2C:39-5(b). That section makes it unlawful to have possession of a handgun unless the possessor has a permit as provided in N.J.S.A. 2C:58-4. Thus the clear implication in N.J.S.A. 2C:39-5(b) is that the instrument covered by that section is of such nature that an applicant (assuming he meets the stringent criteria of N.J.S.A. 2C:58-4(c)) may obtain a permit to carry it. Accordingly unless in an appropriate case an applicant may obtain a permit to carry a spring action BB handgun, the instrument will not be a handgun as defined in N.J.S.A. 2C:39-5(b).
We do not know whether persons owning such instruments have sought permits to carry them. The record is silent on the point. But we do know that N.J.S.A. 2C:58-4 authorizes the issuance of permits for handguns without qualification as to their method of propulsion. Inasmuch as a spring action BB pistol is literally a handgun it follows that in an appropriate case an applicant may obtain a permit under N.J.S.A. 2C:58-4 to carry one. Consequently we conclude that a person carrying such an instrument without a permit violates N.J.S.A. 2C:39-5(b). Thus we reject defendant's statutory construction arguments that the BB pistol was not a handgun or firearm.
Defendant contends that he was not armed with a deadly weapon and thus the evidence does not support his conviction for armed robbery, a first degree offense. Under N.J.S.A. 2C:15-1(b) robbery is a second degree offense unless it is elevated to the first degree by the presence of one of several aggravating factors one of which is that the defendant was armed with or threatened the immediate use of a deadly weapon. See State v. Butler, 89 N.J. 220, 226 (1982). At the time of defendant's offenses "deadly weapon" was defined as "any firearm or other weapon, device, instrument, material or substance, *40 whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury." N.J.S.A. 2C:11-1(c).[4] In State v. Butler the Supreme Court held that the deadly weapon must exist and be of a type that would ordinarily be capable of causing a grievous or fatal injury. 89 N.J. at 229.
The question of whether the gun was a deadly weapon was given by the judge to the jury for resolution. The judge's charge included a comprehensive definition of deadly weapon and instructed the jury that unless defendant was armed with a deadly weapon then if he was guilty of robbery the offense was of the second degree. Inasmuch as the jury found defendant guilty of the first degree offense it determined the weapon was deadly.
The evidence supported this finding. The gun was loaded, operable and ejected BB's. Casagrande testified that defendant put the gun close to his head. Further we are satisfied that the jury could find the instrument could produce serious bodily injury. "Serious bodily injury" means "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." N.J.S.A. 2C:11-1(b). We believe the jury could have decided that the small BB in the weapon if fired into a victim's eye could cause protracted loss or impairment of the eye. See Pair v. Blakly, supra, 160 N.J. Super. at 16.
We reject defendant's contention that his acquittal for possession of a weapon for the unlawful purpose of using it against Casagrande negates an essential element required for his convictions for armed robbery and aggravated assault thus *41 requiring reversal of the convictions on those counts. We will compare the verdicts on the separate counts of the indictment only when an acquittal on one count precludes the finding of one or more elements of an offense charged in another count as a matter of law. State v. Peterson, 181 N.J. Super. 261, 265-266 (App.Div. 1981), certif. den. 89 N.J. 413 (1982). We see no such preclusion here. The verdict here may simply have reflected a finding by the jury that while defendant did not originally possess the weapon for unlawful use the difficulties between defendant and Casagrande triggered the aggravated assault and armed robbery. There would be no inconsistency in the verdict, for the possession count related to the purpose for which defendant possessed the gun and not how he used it. See State v. Bill, supra, 194 N.J. Super. at 195.
We see no error in the limitation of the cross-examination of Casagrande. Inasmuch as the scope of cross-examination rests within the discretion of the trial court we will not disturb the trial judge's ruling absent a clear abuse of discretion that creates prejudicial error. State v. Petillo, 61 N.J. 165, 169 (1972), cert. den. 410 U.S. 945, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973). It is certainly questionable as to whether Casagrande's transportation habits were germane here for there is no doubt that he went home in defendant's taxi and his habits on other nights were not directly related to this case. Further the identity of Casagrande's companions was not material. None was present during the robbery.
There is an unclear issue concerning bail. In defendant's brief he asserts that a $10,000 cash bail was posted. But on the motion to set aside the forfeiture he asserted that the bail was $20,000 with $2,000 cash forfeited. We cannot account for this discrepancy and the State does not address it in its brief. In fact the judge thought that only $2,000 was involved. On the assumption that only $2,000 was involved we see no error in the ruling of the trial court refusing to set aside the forfeiture of bail. Defendant deliberately absented himself *42 from the trial. Only the fortuitous circumstance that he was apprehended at the border caused his reappearance. We will not interfere with the order denying remission as we cannot say that the judge in entering it abused his discretion. See State v. Peace, 63 N.J. 127, 129 (1973). But we add a caveat to our opinion. If the bail was actually $10,000 in cash the trial judge never passed on an application for its return. While we do not suggest that the difference in amount should lead to a different result fundamental fairness requires us to limit our review to a $2,000 cash bail. If the bail was $10,000 in cash our ruling is without prejudice to defendant renewing his motion to set aside the forfeiture. We also note that defendant asserts some of the bail money came from relatives. In the circumstances our opinion is made without prejudice to such applications as any of them seek to make on an individual basis. Of course we do not suggest that if any such application is made by a relative the trial court should consider that the applicant has standing and should be given relief. Those issues are not before us.
Affirmed.
NOTES
[1] We need not consider whether defendant could have been convicted of a lesser included assault offense under the fourth count.
[2] While the judge took the issue from the jury in this case it is possible that the characteristics of some other type of instrument could be subject to a factual dispute so that a jury would have to decide whether the instrument was a firearm.
[3] See also Pair v. Blakly, 160 N.J. Super. 14 (App.Div. 1978), certif. den. 77 N.J. 509 (1978), a case involving the sale of BB's, decided prior to the enactment of the New Jersey Code of Criminal Justice.
[4] This statute has since been amended effective January 4, 1982, to include within the definition of "deadly weapon" any device "which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury." L. 1981, c. 384.