774 A.2d 457

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ROY R. WILLIAMS, JR., DEFENDANT-APPELLANT.

Argued March 26, 2001—Decided June 19, 2001.

324

326

*Brian J. Neary* argued the cause, for appellant (*Mr. Neary*, attorney; *Mr. Neary* and *John Richard Johnson*, on the brief).

*Steven A. Yomtov*, Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney).

The Opinion of the Court was delivered by

LONG, J.

A grand jury indicted Roy R. Williams, Jr., an off-duty police officer, for firing his service revolver at the automobile of another driver with whom he claimed to have been in a motor vehicle accident. The charges were second-degree possession of a weapon for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4a (Count One); fourth-degree aggravated assault by knowingly pointing a firearm at another person, under circumstances manifesting extreme indifference to human life in violation of *N.J.S.A.* 2C:12–1b(4) (Count Two); second-degree aggravated assault by purposely attempting to cause serious bodily injury to another person, in violation of *N.J.S.A.* 2C:12–1b(1) (Count Three); and attempted murder, in violation of *N.J.S.A.* 2C:5–1, 2C:11–3 (Count Four). Tried to a jury, Williams was acquitted on Counts Three and Four, but convicted on Counts One and Two.

The trial court sentenced Williams to a five-year custodial term with three years of parole ineligibility on the conviction for possession of a weapon for an unlawful purpose and to a concurrent eighteen-month custodial term on the conviction for aggravated assault.

Williams appealed, raising a series of issues including prosecutorial misconduct, erroneous evidential admissions, and an inadequate jury instruction on the possession of a weapon for an unlawful purpose count. His conviction was affirmed in an unpublished opinion, although the Appellate Division was divided over the sufficiency of the jury instruction.

The majority determined that the instruction adequately identified the unlawful purpose with which Williams was alleged to have possessed the firearm. In a dissenting opinion, Judge Wecker disagreed, finding that although the evidence presented at trial was sufficient to support Williams's conviction, the inadequacy of the trial court's instruction allowed the jury to convict him without finding, beyond a reasonable doubt, that he had the purpose to use his gun unlawfully against another. The dissent identified four errors with respect to the trial court's instruction: (1) failure to

define the "specific unlawful purpose"; (2) failure to relate the alleged unlawful purpose to the evidence; (3) failure to focus on the time when Williams's possession changed from lawful to unlawful; and (4) failure to instruct that Williams's "purpose" was to be determined by his subjective state of mind.

The case is before us as of right by virtue of the Appellate Division dissent on the issue of the adequacy of the jury instruction regarding possession of a weapon for an unlawful purpose.

*I*

The following evidence was adduced at trial. On June 22, 1995, Williams was involved in what he characterized as a hit-and-run accident between Tammy Erickson in one vehicle and Williams, his wife, and son in the other. At the time of the accident, Mrs. Williams was driving because Williams, who had been injured on the job a week earlier, was taking pain medication and was unable to drive. According to the Williamses, their mini-van was rear-ended by Erickson while stopped at a traffic light. When Erickson failed to pull over to exchange insurance information, Mrs. Williams pursued the fleeing vehicle, sounding her horn and flashing her headlights. At one point during the chase, Williams lost sight of Erickson's vehicle, but shortly after spotted it and attempted to block the roadway to prevent Erickson's escape.

What occurred next was the subject of much dispute at trial. The defense theory, as developed through the testimony of the Williamses, was that after stopping the van in the roadway Mrs. Williams proceeded to get out. Williams also exited the van with badge in hand identifying himself as a police officer. According to their testimony, it was at that point that Erickson's vehicle, traveling at a high rate of speed, headed straight toward the side of the van where Mrs. Williams was standing. Mrs. Williams testified that she yelled for her husband and, as she was jumping out of the way of Erickson's vehicle, she hit the door on the back side of the van. When Williams observed Erickson's vehicle headed in the direction of his wife, he dropped his badge and

reached for his service revolver, which he legally carried "in a gunnysack" attached to his waist. Williams claimed that he fired one round in the direction of Erickson's passing vehicle after hearing his wife's screams because he believed she was in imminent danger of being hit.

Williams testified that he fired his gun as Erickson's car passed him, within a "split second" of hearing his wife scream his name. In response to the question from the assistant prosecutor, "What were you aiming at?" Williams answered: "I just fired, sir." When asked whether he wanted to fire a shot at the person who might have just run over his wife, Williams said: "I just fired at the car in defense of my wife, sir." In response to repeated questions with respect to the order of events surrounding the firing, Williams answered "My wife screamed and I fired in response to that." "I fired in response to my wife's screams, sir." "In my mind, my wife's life was in danger." "I fired because Sandy was in imminent danger of being struck by that vehicle." "I fired in response to my wife screaming and the car was passing." The bullet hit the rear windshield of Erickson's vehicle and exited through the front windshield without striking Erickson.

Erickson's version of the events leading up to the shooting was in stark contrast. She denied having been involved in any collision with the Williams' car on June 22, 1995, inferentially suggesting that she had been the victim of an unprovoked attack by Williams. She testified that while driving to work she observed a van stopped in a "weird spot" in the roadway. She then saw a man next to the van pointing a gun in her direction, at which time she hit the accelerator and turned the corner. The bullet struck her windshield. Erickson testified that the woman in the Williams' van did not get out. Erickson telephoned police upon reaching the diner where she was employed as a waitress.

The State also presented four eyewitnesses whose testimony substantially corroborated Erickson's claim that there were no other persons physically present in the street when Williams fired his weapon. On cross-examination the defense challenged the

ability of those witnesses to observe what occurred from their respective locations and also questioned the point at which their attention was first drawn to the events at issue here. On that evidence, the jury convicted Williams as outlined above.

## II

■ Williams's essential claim at trial was that he acted in defense of his wife in firing his service revolver. That claim, if proven, had two possible effects: to exculpate him altogether on the substantive charges of attempted murder and aggravated assault on a justification theory,[1] and to provide a "failure of proof" defense to the charge that he possessed the weapon for an unlawful purpose. *See, e.g., State v. Bowens*, 108 *N.J.* 622, 633–35, 532 *A.*2d 215 (1987) (holding in context of murder charge that reasonableness of defendant's conduct bears on whether essential elements of Code offense have been met). Those are two entirely distinct uses of Williams's defense of another evidence.

## A

■ In order to exculpate him on the substantive charges of attempted murder and aggravated assault, Williams's belief in the need to use force to defend his wife had to be "reasonable." Although the Code, as originally drafted, approached justification in terms of the subjective attitudes of the criminal actor, on adoption by the Legislature, it was modified to codify the pre-Code common law objective standard of self-defense. *Id.* at 629, 532 *A.*2d 215; *N.J.S.A.* 2C:3–4a, –5a. Under that standard a jury must find that a defendant's belief in the need for force is

---

[1] The affirmative defense of justification is not relevant under *N.J.S.A.* 2C:39–4a. *State v. Harmon*, 104 *N.J.* 189, 207, 516 *A.*2d 1047 (1986). If a defendant arms himself with intent to use a weapon against another in an unlawful manner, he can not be excused from liability under *N.J.S.A.* 2C:39–4a because he subsequently uses the weapon for legitimate defensive purposes. Likewise, if a defendant does not have an intent to use his weapon unlawfully against another, he will not be guilty of a violation of *N.J.S.A.* 2C:39–4a and therefore no justification will be necessary.

reasonable in order to excuse him from liability for a crime whose elements the State has proved. *Ibid.* Thus, if the jury found that Williams's belief in the need to use force against Erickson to protect his wife was honest but unreasonable, he could not have been excused from liability for the substantive offenses of attempted murder and aggravated assault.

## B

The "failure of proof" defense advanced with respect to possession of a weapon for an unlawful purpose is entirely different. Unlike traditional notions of "self-defense," it does not exonerate a defendant who, based on the State's proofs, committed an illegal act. *State v. Harmon,* 104 *N.J.* 189, 207, 516 *A.*2d 1047 (1986). On the contrary, it admits evidence to defeat the State's proof of the elements of the offense in the first instance. *Ibid.* In this case, those elements are:

> (1) the item possessed was a "firearm" within the meaning of *N.J.S.A.* 2C:39–1(f); (2) the defendant "possessed" it, which under *N.J.S.A.* 2C:2–1(c) requires knowledge or awareness of his control over the item; (3) the defendant's purpose or conscious objective was to use it against the person or property of another; and (4) the defendant intended to use it in a manner that was proscribed by law.
>
> [*Id.* at 212, 516 *A.*2d 1047.]

The fourth element is pivotal here. It requires a finding that a defendant armed himself "with the actual purpose of using the weapon against another in a criminal manner." *Id.* at 204, 516 *A.*2d 1047. Because *N.J.S.A.* 2C:39–4a is directed at penalizing the intent to use a weapon affirmatively to commit a crime, *id.* at 199, 516 *A.*2d 1047, the focus is on the subjective attitude of the accused. The State must prove beyond a reasonable doubt that the accused intended to use the weapon unlawfully. Where, as here, state of mind is an essential or material element of the offense, a defendant may not be deprived of the opportunity to assert a mistaken belief that could negate the mental state required to convict. Indeed, the Sixth Amendment affords a defendant that right. *State v. Sexton,* 160 *N.J.* 93, 104–05, 733 *A.*2d 1125 (1999).

We agree entirely with the dissenters that if the jury found that Williams's belief in the need to use force in defense of his wife was honest but unreasonable, that belief could not serve to exonerate him of attempted murder and aggravated assault because we do not recognize "imperfect self-defense" in this State. *State v. Branch,* 155 *N.J.* 317, 329, 714 *A.*2d 918 (1998). But nothing in that conclusion eliminates the right of a defendant like Williams to challenge the proofs advanced on the State's case in chief by showing that he lacked the intention to use his weapon unlawfully. He had a right to show that he, in fact, was motivated by an honestly held but unreasonable belief that such force was required to protect his wife. It simply does not follow that because Williams's honest but unreasonable belief could not exonerate him of attempted murder and aggravated assault, it did not bear on the State's burden to prove that he intended to use his weapon unlawfully.

■ The dissenters' suggestion that this opinion legitimatizes imperfect self-defense is wide of the mark. Post at 338, 774 *A.*2d at 466. Indeed, it misconceives the notion of "imperfect self-defense." Evidence of self-defense (or defense of another) is admissible as an affirmative defense under the New Jersey Code of Criminal Justice. *Harmon, supra,* 104 *N.J.* at 206, 516 *A.*2d 1047; *N.J.S.A.* 2C:3–4, –5. It can excuse a defendant from responsibility for a crime that the State has proved against him only if certain statutory requirements are met. Those requirements are that the defendant honestly and reasonably believed that the use of defensive force was necessary. *State v. Hines,* 303 *N.J.Super.* 311, 323, 696 *A.*2d 780 (App.Div.1997); *N.J.S.A.* 2C:3–4, –5. What makes defensive evidence "imperfect" is its failure to satisfy all of the requirements the Legislature established for its potential use as an affirmative defense. Thus, if a defendant was not reasonable in believing in the need to use defensive force, he could not invoke the affirmative defense of justification because his evidence would be "imperfect" for that purpose. Such evidence would not be "imperfect," however, if it were used for another purpose for

which the Legislature had not established both the honest and reasonable requirements.  Thus, as bearing on the State's proof of the mental element of *N.J.S.A.* 2C:39–4a in its case in chief, evidence that a defendant honestly but unreasonably believed in the need to use defensive force is plainly admissible.  As we explained in *Harmon, supra,* "[i]f an individual's possession of a firearm is motivated honestly by a self-protective purpose, then his conscious object and design may remain not to do an unlawful act, and a material element of a 39–4(a) violation has not been met."  104 *N.J.* at 207, 516 *A.*2d 1047.

In sum, the dissenters' view flows from a failure to acknowledge the well-established distinction between

> a defense based on the existence of a fact that negates an essential element of the crime as defined, and the narrower concept of an affirmative defense that excuses conduct that is otherwise unlawful.  *See, e.g., State v. Bess,* 53 *N.J.* 10, 16–17, 247 *A.*2d 669 (1968) (drawing distinction under pre-Code law between objective justification of self defense that might excuse second-degree murder and subjective intentions of self defense that could negate premeditation and deliberation required for first-degree murder).  Obviously, these considerations cannot be separated in law any more than they can in life.  It is inevitable that in many cases the reasonableness of the defendant's conduct will be presented to the jury in defense of the substantive crimes charged.  Hence, any use of a firearm may involve consideration of those limited circumstances in which the use of deadly force is justifiable *and* may resolve the question whether the purpose was to commit an act proscribed by law.
>
> [*Harmon, supra,* 104 *N.J.* at 209, 516 *A.*2d 1047 (emphasis added).]

Although an honest but unreasonable belief in the need to use force for protective purposes would not serve to exonerate Williams from the substantive charges of attempted murder and aggravated assault because of the Code's interdiction against "imperfect self-defense," *the use of such evidence for a different purpose altogether,* that is, to controvert the State's proof of the intent element of *N.J.S.A.* 2C:39–4a is entirely proper and indeed unremarkable.  That is the backdrop on which the jury charge must be evaluated.

### III

Because Williams did not object to the court's instruction at trial, the standard of review is plain error.  *R.* 1:7–2.  Under

that standard, a defendant not only must demonstrate that the instruction was flawed, but also that in the circumstances presented "the error possessed a clear capacity for producing an unjust result." *State v. Melvin*, 65 *N.J.* 1, 18, 319 *A.*2d 450 (1974); *R.* 2:10–2. The possibility of an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." *State v. Macon*, 57 *N.J.* 325, 336, 273 *A.*2d 1 (1971). We conclude that Williams has satisfied the plain error standard in connection with the jury instruction.

## IV

After giving preliminary instructions, the trial court charged the jury concerning each of the four offenses in the indictment. Second-degree possession of a weapon for an unlawful purpose was the first offense addressed by the court. On the critical element of whether Williams intended to use the gun illegally, the court stated:

The fourth element that the State must prove beyond a reasonable doubt is that the Defendant had a purpose to use the firearm in a manner that was prohibited by law.

I have already defined purpose for you.

The mental element of purpose to use a firearm unlawfully requires that you find that the Defendant possessed the firearm with the conscious objective, design, or specific intent to use it against the person or property of another in an unlawful manner, as charged in the Indictment, and not for some other purpose.

In this case, the State contends that the Defendant's unlawful purpose in possessing the firearm was to use it unlawfully against the person of Tammy Erickson.

You must not consider your own notions of the unlawfulness of some other undescribed purpose of the Defendant, but, rather, you must consider whether the State has proven the specific unlawful purpose charges [sic].

The State need not prove which specific completed crime the Defendant intended to commit using the firearm.

The unlawful purpose alleged by the State may be inferred from all of what was said and done and from all of the surrounding circumstances in this case.

*Any lawful purpose would be a defense to the charge. For example, if the Defendant believed his purpose was to lawfully use the firearm to protect himself or another against the use of unlawful force, then the Defendant's conscious object*

*and design was not to use the firearm in an unlawful manner, and the State has failed to carry its burden of proof on this element beyond a reasonable doubt.*

If you are satisfied beyond a reasonable doubt that the State has proven each of the elements in this offense as I have defined them, then you must find the Defendant guilty.

If, on the other hand, you find that the State has failed to prove beyond a reasonable doubt any one of the elements of this offense as I have defined them, then you must find the Defendant not guilty.

[Emphasis added.]

The trial court then went on to instruct the jury on the elements of aggravated assault and attempted murder. Immediately after completing those instructions, the trial court turned to Williams's claim that he should be exonerated of aggravated assault and attempted murder because he acted in defense of his wife. The court was careful to point out that a requisite element of that defense is a "reasonable belief" on the part of defendant that he had to use deadly force to defend against the conduct of another:

[Y]ou must first determine whether the Defendant used deadly force. If you find the Defendant did so, then you must determine if the Defendant *reasonably believed* that he had to use deadly force to defend against the conduct of another. I'll read that again.

*If you find the Defendant did so, you must determine if the Defendant reasonably believed* he had to use deadly force to defend against the unlawful conduct of another. A *reasonable belief* is one which would be held by a person of ordinary prudence and intelligence situated as this Defendant was.

Self-defense exonerates a person who uses force in the *reasonable belief* that such action was necessary to prevent his death or serious injury, even though his belief was later proven mistaken.

Accordingly, the law requires only a *reasonable,* not necessarily a *correct, judgment.*

[Emphasis added.]

Following that instruction, the jury was excused to commence deliberations.

Approximately ninety minutes later, the jurors sent out the following request for clarification:

Please re-read self-defense clause and how it pertains to the third party protection, and please re-read or explain the four criteria that need to exist to find someone guilty of the first charge on our jury sheet [possession of a weapon for an unlawful purpose].

With no objection from counsel, the trial court simply re-read the justification instruction on defense of another which contains five separate references to the requirement of reasonableness. The court then repeated the charge on possession of a weapon for an unlawful purpose, without informing the jury that an honest but unreasonable belief concerning the need to use the weapon could be considered by the jury in evaluating whether the State proved that Williams intended to use the weapon unlawfully.

The jury's questions highlight the potential for confusion that arises when a justification defense such as self-defense or defense of another is at issue in a case in which a defendant is also charged with possession of a weapon for an unlawful purpose. *See State v. Bilek,* 308 *N.J.Super.* 1, 8, 705 *A.*2d 366 (App.Div.1998) (noting that where self-defense principles are intertwined with possessory offense charge jurors may be misled into focusing on whether defendant was justified in his conduct, rather than on whether he was affirmatively acting with criminal purpose). It is not only possible, but likely, because of the juxtaposition of the jury instruction and re-instruction, that the jury improperly imported the reasonableness requirement from the justification defense to the determination of whether Williams had the requisite state of mind to be convicted under *N.J.S.A.* 2C:39–4a. In other words, on this record, it is impossible to know whether the jury convicted Williams because it concluded that he was not acting in defense of his wife at all, or because it concluded that he was unreasonable in believing that there was a need to use force on her behalf.

The court was required to explain to the jury that in order to negate the unlawful purpose element of the possession offense, Williams's belief in his need to fire the gun did not need to be reasonable, as is required to establish a justification defense to the substantive charges. To be sure, the court correctly instructed the jury regarding the justification defense. However, it was the entirely proper emphasis on reasonableness in that charge that

contributed to the prejudice resulting from insufficient instruction on the possession charge.

Irrespective of Williams's failure to request it, the court should have instructed the jury that even if it found his explanation—that he fired his gun to stop Erickson from killing his wife—to be unreasonable, it nevertheless had to consider whether that belief was an honestly held one. If it was, the jury could have acquitted Williams of the possessory weapons' offense because he lacked the requisite mental state: a purpose to use the gun unlawfully. By failing to explain that a reasonable belief in the need to defend another is required for justification, but that only an honest, though unreasonable, belief is sufficient to negate a purposeful mental state, the judge left the jury to speculate about the applicable law.

Accordingly, because the charge had the clear capacity to mislead the jury, we reverse Williams's conviction under *N.J.S.A.* 2C:39–4a and remand the case for a new trial. Further, we refer the issue of the jury instruction to be used in those circumstances to the Supreme Court Committee on Model Jury Charges (Criminal). Its mission will be to develop an instruction that distinguishes between the mental state required for justification (an honest and reasonable belief) and that required to negate an element of the crime (an honest but not necessarily reasonable belief) for use in cases such as the one before us.

## V

Our ruling makes it unnecessary for us to grapple with the other jury instruction issues raised by the defense and in the dissent. However, we choose to make the following comments. The trial court did not adequately define what specific unlawful purpose, if any, Williams harbored when he shot at Erickson. The sole instruction in this connection was as follows: "In this case, the State contends that the Defendant's unlawful purpose in possessing the firearm was to use it unlawfully against the person of Tammy Erickson."

That charge was inadequate to meet the requirement of *State v. Petties*, 139 *N.J.* 310, 321, 654 *A.*2d 979 (1995), that the court properly guide the jury by relating the law to the facts. It also violated the rule enunciated in *State v. Jenkins*, 234 *N.J.Super.* 311, 316, 560 *A.*2d 1240 (App.Div.1989), that "a jury instruction on a charge of gun possession for unlawful purpose must include an identification of such unlawful purposes as may be suggested by the evidence and an instruction that the jury may not convict based on their own notion of the unlawfulness of some other undescribed purpose." The trial court adhered to the latter portion of that instruction, but not the former, and did not clearly identify "such unlawful purposes as [might have been] suggested by the evidence" so as to avoid the possibility that the jury would convict based upon impermissible considerations. *Ibid.*

Although the jury is permitted to infer an unlawful purpose from circumstantial as well as direct evidence, *Petties, supra,* 139 *N.J.* at 316, 654 *A.*2d 979, such an inference is not compelled, and, in fact, may be countered by other evidence regarding a defendant's actual state of mind. "Thus one may at once be guilty of an aggravated assault through pointing a weapon at another yet be innocent of possession of the weapon for an unlawful purpose." *Harmon, supra,* 104 *N.J.* at 205, 516 *A.*2d 1047 (citing *State v. Mieles*, 199 *N.J.Super.* 29, 488 *A.*2d 235 (App.Div.), *certif. denied,* 101 *N.J.* 265, 501 *A.*2d 933 (1985)). Just as lawful use of a weapon will not necessarily legitimate prior possession for an illegal purpose, illegal use of a weapon alone does not establish the necessary mental element under that statute. "The issue of unlawful possession turns on 'the purpose for which defendant possessed the gun and *not* how he used it.'" *State v. Blanks*, 313 *N.J.Super.* 55, 73, 712 *A.*2d 698 (App.Div. 1998) (quoting *Mieles, supra,* 199 *N.J.Super.* at 41, 488 *A.*2d 235) (emphasis added). Thus, contrary to the dissenters' view, post at 338 (op. at 466–467), the mere fact that Williams was charged with and convicted of an offense stemming from use of the weapon does

not supply the unlawful motive and is not a substitute for a proper charge.

The trial court's obligation is to identify the unlawful purpose(s) that may be suggested by the evidence. *See, e.g., State v. Diaz,* 144 *N.J.* 628, 640, 677 *A.*2d 1120 (1996); *Petties, supra,* 139 *N.J.* at 319–21, 654 *A.*2d 979; *State v. Johnson,* 287 *N.J.Super.* 247, 263, 670 *A.*2d 1100 (App.Div.), *certif. denied,* 144 *N.J.* 587, 677 *A.*2d 759 (1996); *State v. Williams,* 213 *N.J.Super.* 30, 36–37, 516 *A.*2d 265 (App.Div.1986), *certif. denied,* 107 *N.J.* 104, 526 *A.*2d 177 (1987). Where, as here, the original possession was undisputedly lawful, the court has a special obligation to relate the alleged unlawful purpose to the evidence. *State v. Villar,* 150 *N.J.* 503, 511, 696 *A.*2d 674 (1997).

Although it is well-established that the trial court is not required in every case "to define with precision the exact elements of the crime the defendant is alleged to have intended to commit with the firearm," *State v. Mello,* 297 *N.J.Super.* 452, 465, 688 *A.*2d 622 (App.Div.1997), that is not a license to omit any explanation of defendant's putative unlawful purpose. At a minimum; the instruction should have included a more specific reference to the underlying substantive charges, even if only generically. *Id.* at 466, 688 *A.*2d 622. To be sure, neither acquittal nor conviction of the substantive offense is determinative of a charge of unlawful possession. Nevertheless, the other offenses charged provided at least a framework for the jury in analyzing the charge of possession of a weapon for an unlawful purpose. On the retrial, the instruction should be focused on the unlawful purpose Williams is alleged to have harbored when he shot at Erickson's car and the jury should be instructed that Williams's failure to comply with any internal rules and regulations of his employer do not constitute an unlawful purpose under *N.J.S.A.* 2C:39–4.

## VI

The judgment of conviction entered upon the jury verdict is reversed. The matter is remanded for trial at which instructions

should be tailored to the principles to which we have adverted in this opinion.

COLEMAN, J., dissenting.

This is a "road-rage case" by a police officer in which the Court concludes that it is likely "that the jury improperly imported the reasonableness requirement from the justification defense to the determination of whether Williams had the requisite state of mind to be convicted under *N.J.S.A.* 2C:39–4a." *Ante* at 338, 774 *A.*2d at 466. The majority reaches that conclusion by asserting that, "on this record, it is impossible to know whether the jury convicted Williams because it concluded that he was not acting in defense of his wife at all, or because it concluded that he was unreasonable in believing that there was a need to use force on her behalf." *Id.* at 338, 774 *A.*2d at 466. The Court also concludes that the jury should have been instructed that "even if it found [defendant's] explanation—that he fired his gun to stop Erickson from killing his wife—to be unreasonable, [the jury] nevertheless had to consider whether that belief was an honestly held one." *Id.* at 338, 774 *A.*2d at 466. The Court finds that under the plain error rule, a reversal of defendant's conviction for possession of the weapon for an unlawful purpose is required because "[b]y failing to explain that a reasonable belief in the need to defend another is required for justification, but that only an honest, though unreasonable, belief is sufficient to negate a purposeful mental state, the judge left the jury to speculate about the applicable law." *Id.* at 338–340, 774 *A.*2d at 466–467. I disagree with the majority's conclusion that, applying the plain error standard, the jury instructions given in this case require reversal of defendant's conviction. I therefore dissent.

I.

This appeal arises out of a shooting that occurred on June 22, 1995. Defendant, an off-duty Bayonne police officer, his wife, and their son were driving in their family's van in the Borough of

Matawan, Monmouth County, New Jersey, and were involved in an altercation with another motorist, Tammy Erickson. Defendant claimed that Erickson rear-ended his van, and then drove off without stopping to exchange insurance information. Defendant and his wife then pursued Erickson's vehicle for several miles, flashing their lights and honking their horn to get Erickson to pull over. Even after losing Erickson's car, defendant and his wife continued to search for her. When they saw her car again, they pulled their van in front of her car, in the middle of the road, and defendant got out. Erickson continued to drive past the van and defendant fired one shot with his service weapon through Erickson's rear windshield. Fortunately, the bullet exited through the front windshield without striking Erickson.

At trial defendant admitted firing his gun at Erickson's car, but claimed that he fired in defense of his wife and child. Defendant testified that he believed that Erickson's car was heading toward his wife, who was standing in the road, and that he shot his gun at Erickson's car to protect his wife from being struck. Defendant's wife testified that when she pulled the van in front of Erickson's car, she stepped out into the middle of the road and saw Erickson's car coming toward her, so she yelled to her husband.

Erickson, on the other hand, testified that while she was driving down the road about to make a right-hand turn, a van stopped in the road and a man with a gun jumped out of the van. Erickson stated that as she made her turn, she "heard a shot and my window in the back was shattered, and a bullet came past me and out my front window." Erickson testified that no one was standing in front of her car while she was driving. Four other eyewitnesses testified that they saw no person in the road at the time of the shooting, other than defendant.

## II.

### A.

This appeal must be considered in the context of the plain error standard because defense counsel did not object to the jury

instructions or the trial court's response to the jury's questions. Thus, even if the jury charge was somehow flawed, defendant must show that "the error possessed a clear capacity for producing an unjust result." *State v. Melvin*, 65 *N.J.* 1, 18, 319 *A.*2d 450 (1974); *accord R.* 2:10–2. The possibility of an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." *State v. Macon*, 57 *N.J.* 325, 336, 273 *A.*2d 1 (1971).

The majority's position is that the jury instruction in this case was fatally flawed because it failed to explicitly draw a distinction between the state of mind that was necessary to convict defendant of possession of a weapon for an unlawful purpose and the state of mind that was necessary to exculpate him entirely under a self-defense theory. It is undisputed that if defendant had no unlawful purpose for possessing the weapon, then he cannot be guilty of violating *N.J.S.A.* 2C:39–4a.

"Generally, self-defense as a justification ... is an 'affirmative defense that excuses conduct that is otherwise unlawful.' " *State v. Moore*, 158 *N.J.* 292, 301, 729 *A.*2d 1021 (1999) (quoting *State v. Harmon*, 104 *N.J.* 189, 209, 516 *A.*2d 1047 (1986)). Because defendant's possession of his service revolver was lawful until the moment he allegedly used it unlawfully to fire a round at Erickson's vehicle, I must examine his self-defense justification defense to the charge of possessing the weapon for an unlawful purpose within the context of the aggravated assault charge for which he was convicted. The use of deadly force for self-protection or defense of another "may be a justifiable defense, provided that certain statutory preconditions are satisfied." *Id.* at 301, 729 *A.*2d 1021; *see N.J.S.A.* 2C:3–4 to –5. "[L]egal self-defense contemplates volitional conduct." *Ibid.*

The jury convicted defendant of aggravated assault upon Erickson in violation of *N.J.S.A.* 2C:12–1b(4). The statute provides that "[a] person is guilty of aggravated assault if he ... [k]nowingly under circumstances manifesting extreme indifference to the value of human life points a firearm ... at or in the direction of another,

whether or not the actor believes it to be loaded." *N.J.S.A.* 2C:12–1b(4). Measured in terms of degrees, knowingly pointing a firearm at or in the direction of another person "under circumstances manifesting extreme indifference to the value of human life means a probability as opposed to a mere possibility of causing ... injury." *Moore, supra*, 158 *N.J.* at 302, 729 *A.*2d 1021. The jury rejected defendant's justification defense as to the fourth-degree aggravated assault charge. The Appellate Division and the majority have affirmed that conviction. The record supports the conclusion that the foregoing aggravated assault was one of the three unlawful purposes for which defendant was alleged to have possessed the weapon, albeit for the short time he allegedly used the weapon unlawfully.

This case falls into the majority of cases in which "the charge of possession of a firearm for an unlawful purpose 'is coupled with a charge of an act accomplished with the gun—a robbery, an assault, a homicide—which the court tells the jury is unlawful.'" *State v. Diaz*, 144 *N.J.* 628, 636, 677 *A.*2d 1120 (1996) (quoting *State v. Jenkins*, 234 *N.J.Super.* 311, 315, 560 *A.*2d 1240 (App.Div. 1989)). Although "a conviction based on the use of the weapon is not a required precondition to a conviction for the possessory offense" under *N.J.S.A.* 2C:39–4a, it is part of the totality of the circumstances that the jury considers in determining the subjective intent of the defendant. *Diaz, supra*, 144 *N.J.* at 636, 677 *A.*2d 1120. In other words, when, as here, the firearm has been used to commit an offense such as an assault, use of the weapon in that manner "provides the factual underpinning for drawing an inference that the firearm was possessed for an unlawful purpose." *Ibid.*

### B.

Pertinent to this case, the third and fourth elements of the offense of possession of a firearm with the purpose to use it unlawfully against Erickson's person in violation of *N.J.S.A.* 2C:39–4a, require proof that "defendant's purpose in possessing

the firearm was to use it against the person or property of [Erickson,] and [that] defendant intended to use the firearm in a manner that was unlawful." *Diaz, supra,* 144 *N.J.* at 635, 677 *A.*2d 1120; *accord Harmon, supra,* 104 *N.J.* at 212, 516 *A.*2d 1047. Proof that defendant intended to use the firearm in a manner that was unlawful requires "an identification of the unlawful purpose or purposes suggested by the evidence." *State v. Villar,* 150 *N.J.* 503, 511, 696 *A.*2d 674 (1997). In this case, attempted murder and two aggravated assaults upon Erickson based on defendant's use of his service revolver were charged in the indictment. Clearly, the State relied on the use of the gun to commit one or more of those offenses to establish the unlawful purpose of the possessory offense. The mental state required for possession of a firearm with a purpose to use it against the person or property of another for an identified unlawful purpose is satisfied "if it is his [or her] conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances if he [or she] . . . believes or hopes that they exist." *N.J.S.A.* 2C:2–2b(1). As noted previously, the "purpose to use a weapon unlawfully may be inferred from the [facts and] circumstances" presented at trial. *Villar, supra,* 150 *N.J.* at 510, 696 *A.*2d 674.

The trial court's jury instruction regarding the third and fourth elements of possession of a weapon for an unlawful purpose correctly explained the law to the jury. In addition, the jury charge also made clear that:

> Any lawful purpose would be a defense to the charge. For example, *if the Defendant believed his purpose was to lawfully use the firearm to protect himself or another against the use of unlawful force, then the Defendant's conscious object and design was not to use the firearm in an unlawful manner,* and the State has failed to carry its burden of proof on this element beyond a reasonable doubt.
> [Emphasis added.]

The trial court's instruction stressed to the jury the importance of determining whether defendant had the purpose—the conscious object—to use his gun unlawfully against Tammy Erickson. In light of that fact, I am satisfied that the jury understood that it could not convict defendant of possession of a weapon for an

unlawful purpose unless each juror found that defendant had the specific subjective intent to use his gun against Tammy Erickson in an unlawful manner when he pointed the gun and fired into Erickson's vehicle.

Because defendant claimed that he fired his gun in defense of his wife, the trial court instructed the jury on the law of defense of a third person. The court explained that the applicable statute, *N.J.S.A.* 2C:3–4 to –5, requires three elements to be met:

> [O]ne, the actor would be justified in using such force to protect himself against the injury believed to be threatened to the person whom he seeks to protect; and, two, under the circumstances as the actor reasonably believes them to be, the person whom he seeks to protect would be justified in using such protective force; and three, the actor reasonably believes that his intervention is necessary for the protection of another person.

The jury instructions on defense of another properly informed the jury that defendant's belief in the necessity to use deadly force to prevent harm to his wife and child had to be reasonable and honest. In accordance with *State v. Kelly*, 97 *N.J.* 178, 198–99, 478 *A.*2d 364 (1984), the jury was instructed that "[s]elf defense exonerates a person who uses force in the reasonable belief that such action was necessary to prevent his death or serious injury, even though his belief was later proven mistaken. . . . Accordingly, the law requires only a reasonable, not necessarily a correct, judgment." The majority agrees that "the court correctly instructed the jury regarding the justification defense." *Ante* at 338, 774 *A.*2d at 466. Self-defense and defense of another as justifications mean that the actor's conduct was volitional. Under those two theories of justification, exoneration is based on a legal excusal for intentional conduct—not on an actor's mental state. Viewed in that context, the "honest" component of self-defense or defense of another as legal justifications cannot serve to reduce the mental culpability required for a conviction pursuant to *N.J.S.A.* 2C:39–4a. Under our Code of Criminal Justice, the honesty of a defendant police officer's belief, that his or her conduct is lawful when he or she intentionally fires a loaded service revolver at another is irrelevant to whether the requisite mental culpability has been established for an offense under

*N.J.S.A.* 2C:39–4a. The Code provides that "[n]either knowledge nor recklessness nor negligence as to whether conduct constitutes an offense or as to the existence, meaning or application of the law determining the elements of an offense is an element of such an offense." *N.J.S.A.* 2C:2–2d.

## C.

In an apparent attempt to circumvent the Code's strictures for determining mental culpability required for a particular offense, the majority has reached outside the Code to support its holding. The majority's reliance on *State v. Bowens,* 108 *N.J.* 622, 532 *A.*2d 215 (1987), to support its conclusion that Williams's belief in the need to use force to defend his wife only had to be 'honest' and not necessarily reasonable is misplaced. The majority's attempt to disguise its use of "imperfect self-defense" as nothing more than defensive proof is not persuasive. The majority is commingling self-defense and defense of another jurisprudence with imperfect self-defense law. *Bowens* used the "honest" principle in its discussion of imperfect self-defense, but not in its discussion of perfect self-defense. *Bowens, supra,* 108 *N.J.* at 628, 532 *A.*2d 215. In the present case, defendant alleged that he fired his gun in perfect defense of another. Defendant conceded in his testimony that he acted purposely when he fired the gun at Erickson's vehicle, a concession that was consistent with his justification defense. Unlike a murder case in which imperfect self-defense can reduce only the degree of the homicide based on the level of mental culpability, here the use of imperfect self-defense would have the effect of obtaining a possible acquittal on the possessory offense.

*Bowens,* a murder case, defined imperfect self-defense as "an honest subjective belief on the part of the killer that his or her actions were necessary for his or her safety, even though an objective appraisal by reasonable people would have revealed not only that the actions were unnecessary, but also that the belief was unreasonable." *Bowens, supra,* 108 *N.J.* at 628, 532 *A.*2d 215. That is precisely what the majority has concluded in this case,

albeit under a different name. In *Bowens,* the Court made clear that "[e]vidence of imperfect self-defense does not *justify* the conduct, it *mitigates* the offense." *Id.* at 633, 532 *A.*2d 215. Unlike a murder prosecution, there is no way to mitigate second-degree possession of a firearm for an unlawful purpose since there is no lesser-included offense.

In *State v. Pitts,* 116 *N.J.* 580, 606, 562 *A.*2d 1320 (1989), this Court stated that "[t]he predicate for [an aggravated manslaughter] instruction, when it is based on evidence of imperfect self-defense, is that such evidence ... negates the mental state required for murder." In *State v. Colon,* 298 *N.J.Super.* 569, 578, 689 *A.*2d 1359 (App.Div.), *certif. denied,* 149 *N.J.* 410, 150 *N.J.* 27, 694 *A.*2d 195, 695 *A.*2d 670 (1997), the court found no prejudice related to the trial court's failure to charge the jury on imperfect self-defense in a case involving convictions for reckless aggravated assaults and possession of a weapon for an unlawful purpose. In *State v. Pridgen,* 245 *N.J.Super.* 239, 248, 584 *A.*2d 869 (App.Div.), *certif. denied.,* 126 *N.J.* 327, 598 *A.*2d 886 (1991), another murder case, the court found that the defendant suffered no prejudice due to the trial court's failure properly to charge imperfect self-defense because the defendant was convicted of aggravated manslaughter, which only requires a reckless culpability.

In contrast to the majority's decision, I believe that the holding in *Bowens* should be restricted to murder cases because, as the Court observed there, "the Code of Criminal Justice does not provide an independent category of justification, excuse, or mitigation under the concept of imperfect self-defense." *Bowens, supra,* 108 *N.J.* at 626, 532 *A.*2d 215 (citation omitted). *Bowens* also held that a trial court need not charge separately that "imperfect self-defense would serve to reduce murder to an unspecified degree of manslaughter." *Id.* at 637, 532 *A.*2d 215; *State v. Branch,* 155 *N.J.* 317, 329, 714 *A.*2d 918 (1998) (declaring that "there is no such defense as imperfect self-defense" in New Jersey); *State v. Gart-*

*land,* 149 *N.J.* 456, 469, 694 *A.2d* 564 (1997) (stating "we have declined to create new justifications for criminal conduct"). In *State v. Coyle,* 119 *N.J.* 194, 228, 574 *A.2d* 951 (1990), a capital murder case, the Court held that the trial court did not err in refusing to specifically instruct the jury on the theory of imperfect self-defense. Restricting imperfect self-defense to murder cases is a compromise position employed in many states because imperfect self-defense allows the jury to find the defendant guilty of a lesser-included offense of murder based on the reduced level of mental culpability.

A number of jurisdictions do not recognize the concept of imperfect self-defense under any circumstances. *State v. Hughes,* 106 *Wash.2d* 176, 721 *P.2d* 902, 910 (1986) ("The statutory definitions of self-defense and manslaughter in Washington provide no room for the theory advocated by the defendant that an honest (or good faith) but unreasonable belief that self-defense is necessary merits leniency."); *Best v. State,* 736 *P.2d* 739, 747 (Wyo.1987) ("The title of the theory, 'imperfect self-defense,' is in itself intriguing. It is difficult to discern whether the adjective describes the legal theory or those courts which have been sufficiently gullible to swallow this proposition and reiterate it for a jury."); Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.7(I) (1986) ("[O]ne who uses force against another with an honest but unreasonable belief that he must use force to defend himself ... is not, in most jurisdictions, justified in his use of force, for proper self-defense requires that the belief in the necessity for the force he uses be reasonable.").

Most states that permit imperfect self-defense limit its application to homicide cases. *State v. Abdalaziz,* 45 *Conn.App.* 591, 696 *A.2d* 1310, 1316 (1997) ("The majority view is that imperfect self-defense applies to murder and homicide charges."), *aff'd,* 248 *Conn.* 430, 729 *A.2d* 725 (1999); *Richmond v. State,* 330 *Md.* 223, 623 *A.2d* 630, 632 (1993) (finding "the concept of mitigation has universally and historically been limited to offenses involving criminal homicide, or the 'shadow' or inchoate forms of those offenses," and that "imperfect self-defense negates only that species of malice applicable to murder"); *Bryant v. State,* 83 *Md.App.*

237, 574 *A.*2d 29, 32–33 (1990) ("Imperfect self-defense is an aspect of homicide law and nothing more. Outside of homicide law, the concept doesn't exist.... With respect to all other crimes, the defendant is either guilty or not guilty. He either acted in self-defense or he did not. There is no 'in between.' "); *People v. Heflin,* 434 *Mich.* 482, 456 *N.W.*2d 10, 22 n. 22 (1990) ("[T]he majority of jurisdictions that recognize 'imperfect self-defense' use it as a method of negating the element of malice in a murder charge.... [I]n these jurisdictions, 'imperfect self-defense' mitigates murder to voluntary manslaughter."); Cynthia K.Y. Lee, *The Act Belief Distinction in Self Defense Doctrine: A New Dual Requirement Theory of Justification,* 2 *Buff.Crim. L.Rev.* 191, 241 (1998) (stating "[t]he doctrine of imperfect self-defense is generally limited to defendants charged with murder"). I disagree, therefore, with the majority that there is an "in between." That conclusion is based on the majority's improper creation of a new justification defense based on the imperfect self-defense doctrine. That doctrine should be restricted to murder prosecutions. The majority has rewritten the Legislature's definition of justification defenses under *N.J.S.A.* 2C:3–4 and –5.

Even if imperfect self-defense or defense of others were applicable to non-murder cases, I would find no error in failing to give such a charge in this case. The State relied on the commission of each of the substantive offenses charged in the indictment as the predicate for the unlawful purpose element of the possessory offense under *N.J.S.A.* 2C:39–4a. The jury convicted defendant of fourth-degree use of the weapon by pointing and firing at Erickson in violation of *N.J.S.A.* 2C:12–1b(4). Defendant's admission that he fired the weapon at Erickson and the jury's finding that he knowingly pointed and fired the weapon at Erickson under circumstances manifesting extreme indifference to the value of human life provides the factual underpinning for the jury to draw an inference that defendant's possession while pointing and firing the gun was for an unlawful purpose. The majority agrees that the jury was properly instructed on self-defense and that the evidence was sufficient to sustain a finding of such an unlawful purpose

under *N.J.S.A.* 2C:39–4a. The majority is of the view, however, that the failure to give an imperfect self-defense charge deprived the jury of an opportunity to find that the purposefulness requirement for the possessory offense was not met. Because the majority does not deny that the jury rejected the justification defense regarding the fourth-degree offense, I am persuaded that that conviction under the circumstances of this case rendered the distinction between acting purposely and knowingly meaningless. When defendant acknowledged that he aimed and fired his service revolver at Erickson, that informed the jury that he acted purposely when he held the gun in his hand and fired it. His conscious object was to strike Erickson and/or her vehicle, and at that instant his possession of the weapon was for an unlawful purpose unless its possession and use were justified. In convicting defendant of fourth-degree aggravated assault, the jury determined that defendant's use of the gun was unlawful, and because the period of the unlawful possession was restricted to the time it was used against Erickson, the jury could infer that his possession at that moment was for an unlawful purpose.

In its efforts to examine the intricacies of the intersection between the trial court's self-defense/defense of another jury instruction and its instruction on possession of a weapon for an unlawful purpose, the majority discounts the likelihood that the jury simply concluded that defendant's version of events was not credible. "The jury's fact-finding function is all-inclusive and encompasses the evaluation of the credibility of witnesses and the weight and worth of evidence." *State v. Ingenito,* 87 *N.J.* 204, 211, 432 *A.*2d 912 (1981). In contrast to the testimony given by defendant and his wife, five of the State's eyewitnesses testified that they did not see anyone else standing in the road when defendant fired at Erickson's car. Given the testimony adduced at trial, the jury would have been justified in concluding that defendant fired his gun out of anger, not to protect his wife. At that moment, he possessed the weapon to use it unlawfully against Erickson.

The majority opinion refers to several of defendant's opaque responses as to why he fired his gun, including: "I fired in response to my wife screaming and the car was passing." In the absence of a clear sense of what led defendant to fire the shot, the jury may have relied on its common sense. For instance, it is not clear how shooting into the rear window of Erickson's car, after it had passed him by, and as it allegedly was about to strike his wife, would have helped to protect defendant's wife. If defendant had been attempting to stop Erickson's car, he testified that he would have "emptied [his] clip," which he did not do. Moreover, if defendant's wife was standing right in front of Erickson's approaching car, it seems that shooting into Erickson's car, either to scare her, injure her, or kill her, might even have increased the likelihood that Erickson's car would have spun out of control and run over his wife.

For all of the foregoing reasons, I find that the jury instructions given in this case adequately explained the jury's responsibility with reference to the charge of possession of a weapon for an unlawful purpose. I find no error, but if there was some level of error in the trial court's jury charge, under the compelling facts of this case that error was harmless.

### III.

I also disagree that the jury instructions were insufficient to satisfy the dictates of State v. Petties, 139 N.J. 310, 321, 654 A.2d 979 (1995). The indictment charged that defendant possessed the firearm to use it unlawfully against the person of Tammy L. Erickson and the two assault charges as well as the attempted murder charge named Erickson as the victim. It is clear to me that the State has always relied on the three substantive crimes charged in the indictment to provide the factual underpinning for a conviction of possession of a weapon for an unlawful purpose. During summation, the prosecutor specifically stated that, at the moment that defendant drew his gun to shoot, he possessed it "for an unlawful purpose, to use it against Tammy Erickson, to point it

*at her or in her direction."* (Emphasis added). The jury convicted defendant of that crime—aggravated assault by knowingly pointing a firearm at another person under circumstances manifesting an extreme indifference to the value of human life. Consistent with that conviction, the jury also determined that when defendant unholstered, pointed, and fired his gun, he had the purpose to use it unlawfully against Tammy Erickson.

## IV.

I would affirm defendant's conviction for the reasons stated and substantially for the reasons expressed in the Appellate Division's majority opinion.

Justice Verniero joins in this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, LONG, LAVECCHIA and ZAZZALI—5.

*For affirmance*—Justices Coleman and Verniero—2.