# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1613-18T2

STATE OF NEW JERSEY
IN THE INTEREST OF J.C.,

    a Juvenile.

_____

Submitted May 16, 2019 – Decided June 12, 2019

Before Judges Simonelli and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FJ-06-0057-18.

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for appellant State of New Jersey (Deirdre M. MacFeeters, Assistant Prosecutor, of counsel and on the briefs).

Joseph E. Krakora, Public Defender, attorney for respondent J.C. (John W. Douard, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

    J.C., a juvenile, was charged with one count of first-degree sexual assault

under N.J.S.A. 2C:14-2(a)(1) based upon allegations that he anally penetrated

his younger brother. The trial judge ordered a competency evaluation of J.C. pursuant to N.J.S.A. 2C:4-5. Two reports were provided by a licensed psychologist, and J.C. moved to dismiss the complaint based upon lack of mental capacity to proceed. Following a competency hearing, the trial judge dismissed the charges against J.C., finding he was incompetent to stand trial. The State appeals the order dismissing the charges against J.C., arguing the trial judge did not follow proper competency procedures and failed to make findings as to whether J.C. is a danger to himself and others. For the following reasons, we reverse and remand.

I.

We derive the following facts from the record. On April 12, 2017, Officer Joseph Cooper of the Vineland Police Department was dispatched to an elementary school to investigate a reported suspicious circumstance. Upon arrival, the principal advised Cooper that a student, eight-year-old E.Z., told her his brother, twelve-year-old J.C., had "humped" him that morning. E.Z. told the principal J.C. was clothed during the incident but he had removed E.Z.'s clothes. After leaving the school, Cooper spoke to the children's mother who reported observing J.C. "jumping away from" E.Z. that morning. She also mentioned that after questioning her sons about what they were doing, E.Z. told her J.C. was

"humping" him. E.Z. later told her J.C. had "pulled down his pants and tried to put it in his butt."

After speaking with the mother, Cooper contacted the Cumberland County Prosecutor's Office and the children, along with their mother, were transported to the prosecutor's office for questioning. A detective interviewed E.Z., and he disclosed that J.C. "held him down by his arms and legs and 'humped' him [that] morning[,]" while E.Z. was lying naked on his stomach and J.C. was clothed. E.Z. stated J.C. "put his penis on his body" and E.Z. could not tell him to stop because J.C. had covered E.Z.'s mouth with his hand. E.Z. also reported other acts of sexual contact with J.C. and explained the incidents occurred while his mother was asleep in another bedroom. E.Z. stated J.C. had inserted his penis into E.Z.'s mouth on multiple occasions, and inside his buttocks on April 11, 2017, and on April 12, 2017, the date of the interview.

J.C. was also interviewed. During his interview, J.C. admitted to "humping" E.Z. and putting his penis in E.Z.'s mouth earlier that morning, and he "admitted that he did stick his penis inside of [E.Z's] buttocks on Monday, April 10[], 2017." He also admitted to two incidents of anal sexual contact, and one incident of oral sexual contact with E.Z. After the interview was concluded, J.C. told his mother "he didn't want to live anymore and advised that he wanted

to hurt himself." The detective called 911 as a result of this disclosure, and J.C. was hospitalized for crisis intervention, evaluation, and treatment.

On July 21, 2017, J.C. was charged with one count of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), as a result of the allegation that he anally penetrated E.Z. on April 11, 2017. On January 29, 2018, a prior judge ordered the Division of Child Protection and Permanency (Division) to provide a competency evaluation of J.C. pursuant to N.J.S.A. 2C:4-5. On March 27, 2018, Richard T. Barr, Ed.D. conducted an intellectual evaluation of J.C., and provided a written report dated March 31, 2018.

On April 3, 2018, J.C.'s counsel moved to dismiss the juvenile complaint based on Barr's report. The prior judge ruled J.C. "lacked the fitness to proceed at [that] time," and she inactivated the juvenile complaint for three months. On April 20, 2018, the State filed a motion to reconsider the judge's April 3, 2018 ruling and for leave to amend the order to schedule a competency hearing for J.C. Following oral argument on May 29 and 30, 2018, the judge denied the State's motion without prejudice, pending receipt of a second report from Barr.

On May 31, 2018, Barr conducted a second psychological-intellectual evaluation of J.C. and issued a supplemental report. On September 21, 2018,

4

defense counsel filed a motion to dismiss the juvenile complaint based on J.C.'s lack of mental competence to proceed under N.J.S.A. 2C:4-4.

The trial judge held a competency hearing in connection with the motion on November 15, 2018. At the hearing, the trial judge qualified Barr as an expert witness in the field of psychology, and Barr opined as to J.C.'s competency to stand trial. At the conclusion of the hearing, the trial judge granted the motion, dismissed the charges against J.C. with prejudice pursuant to N.J.S.A. 2C:4-6(c), and granted the State's request for a stay pending appeal.

On appeal, the State argues:

     I.     THE TRIAL COURT ERRED IN FINDING THAT DR. BARR WAS QUALIFIED TO GIVE AN EXPERT OPINION OF THE JUVENILE'S COMPETENCY TO STAND TRIAL.

     II.    THE TRIAL COURT DID NOT HAVE SUFFICIENT EVIDENCE TO MAKE A DETERMINATION AS TO THE JUVENILE'S COMPETENCY TO STAND TRIAL.

          A.     Dr. Barr Did Not Complete a Competency Evaluation of the Juvenile.

          B.     The Trial Court Erred by Basing Its Ruling on Dr. Barr's Net Opinion.

     III.    THE TRIAL COURT ERRED IN DISMISSING THE JUVENILE'S CHARGES WITHOUT HOLDING THE CHARGES IN ABEYANCE. (Not Raised Below).

5

IV. THE TRIAL COURT ERRED IN DISMISSING THE JUVENILE'S CHARGES WITH PREJUDICE AND WITHOUT ANY CONDITIONS WITHOUT COMPLETING A DETERMINATION OF THE JUVENILE'S DANGEROUSNESS.

The State argues it is not requesting that J.C. be deemed competent to stand trial, but it did not stipulate to J.C.'s lack of competence to stand trial. The State also raises concerns about competency procedures going forward and requiring appropriate procedures to be followed. We do not provide advisory opinions. "The notion that a court of appeals willy-nilly can decide issues unnecessary to the outcome of the case results in the wholesale issuance of advisory opinions, a practice our judicial decision-making system categorically rejects." State v. Rose, 206 N.J. 141, 189 (2011); see De Vesa v. Dorsey, 134 N.J. 420, 428 (1993) (recognizing it is firmly established that controversies which have become moot or academic prior to judicial resolution ordinarily will be dismissed); see also Indep. Realty Co. v. Twp. of N. Bergen, 376 N.J. Super. 295, 301 (App. Div. 2005) (noting that while the New Jersey Constitution does not confine the exercise of judicial power to actual cases and controversies, "it is well settled that [courts] will not render advisory opinions or function in the

abstract"). Since the State's position is equivocal, we will address the issues raised.

II.

"We allow substantial deference to the trial court when it determines whether to qualify a proposed expert. A court's witness-qualification decision is subject to essentially an [abuse of discretion] standard of review and will only be reversed for 'manifest error and injustice.'" State v. Jenewicz, 193 N.J. 440, 455 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)). Similarly, "our role in reviewing the decisions of a trial judge respecting competence [is] 'typically, and properly, highly deferential.'" State v. M.J.K., 369 N.J. Super. 532, 548 (App. Div. 2004) (quoting State v. Moya, 329 N.J. Super. 499, 506 (App. Div. 2000)).

An "abuse of discretion only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting Torres, 183 N.J. at 572), and occurs when the trial judge's "decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." United States v. Scurry, 193 N.J. 492, 504 (2008) (alteration in original) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

7

At the November 15, 2018 competency hearing, the trial judge qualified Barr as an expert in psychology, and noted he lacked expertise in respect of statutes pertaining to competency to stand trial but he had "a long education and years of experience in the field of psychology." The trial judge found:

> I do recognize [Barr] as an expert in the field of psychology, and clearly . . . questions can be asked of him and challenges can be made to him . . . that he is not a forensic psychologist or that he does not have sufficient expertise in the field. [Those] are determinations that this [c]ourt has to make. This [c]ourt has to apply the statutory standards after listening to the testimony and evidence presented to me, and . . . has to decide whether or not this particular doctor has sufficient expertise in the field of knowledge that the [c]ourt has to make a determination of. But, I do find that with the education and experience that [] Barr has, that he is an expert in the field of psychology as of this point, and I will recognize him as that, and allow him to testify as that.

The State argues that the trial judge's decision to qualify Barr as an expert on competency constituted "'manifest error' which, if allowed to stand, could result in great injustice to the State and the victims in this case." J.C. counters that Barr's testimony satisfied the requirements for expert testimony, and he was qualified to opine as to J.C.'s mental capacity. The State did not proffer any expert testimony at the hearing.

"Expert testimony is needed where the factfinder would not be expected to have sufficient knowledge or experience and would have to speculate without the aid of expert testimony."  M.J.K., 369 N.J. Super. at 549 (quoting Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001)).  The admissibility of expert testimony is governed by Rule 702, which provides:  "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."  N.J.R.E. 702.  Our courts have held that Rule 702 sets forth three basic requirements for the admission of expert testimony:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [Torres, 183 N.J. at 567-68 (quoting State v. Berry, 140 N.J. 280, 290 (1995)).]

Only the third requirement is at issue here.  "Prior to the admission of expert testimony, the trial court should conduct a hearing under [Rule 104] concerning the admissibility of the proposed expert testimony."  Id. at 567.  "In a Rule 104 hearing . . . the party offering the proposed expert should elicit the

qualifications of the expert and the specific content of the proffered testimony. After cross-examination by the opposing party, the court should render a decision on the admissibility of the proffered testimony." Ibid. "In terms of qualifications, an expert 'must "be suitably qualified and possessed of sufficient specialized knowledge to be able to express [an expert opinion] and to explain the basis of that opinion."'" Agha v. Feiner, 198 N.J. 50, 62 (2009) (alteration in original) (quoting State v. Moore, 122 N.J. 420, 458-59 (1991)). "In respect of [this requirement] . . . our trial courts take a liberal approach when assessing a person's qualifications." Jenewicz, 193 N.J. at 454. Thus, "[t]he expert may be qualified on the basis of his experience, even when it is limited." Torres, 183 N.J. at 572.

At the Rule 104 hearing, Barr testified he is a licensed psychologist in New Jersey; he has evaluated over one hundred juveniles for the Division; and, based upon his experience, education, and qualifications, he can determine whether or not a juvenile is competent to stand trial.

On cross-examination, Barr conceded he is not a forensic psychologist and is unfamiliar with the legal standards for competency to stand trial in this State, and the standards applied by psychologists when preparing an evaluation relative to competency to stand trial. Nonetheless, he confirmed his expertise

qualified him to provide the court with an opinion as to J.C.'s competence to stand trial.

The State relies on our opinion in M.J.K. to support its argument that Barr was not qualified to provide expert testimony as to J.C.'s competence to stand trial. In M.J.K., we concluded the trial judge erred by placing "great weight" on an expert's opinion despite "the fact that [the expert's] experience in evaluating mentally retarded individuals like defendant was minimal." 369 N.J. Super. at 550.

In M.J.K., we reversed the trial judge's conclusion that the defendant was competent to stand trial, reasoning that the expert testimony on which the court relied was "fundamentally flawed." Id. at 548-49. However, in contrast to the State's position in this matter, the court did not find that the expert in M.J.K. was unqualified to provide expert testimony. On the contrary, the court noted:

> We do not intend to imply that the judge should have simply counted the experts on each side of the issue in some sort of a "majority rules" analysis. Nor do we intend to imply that [the expert] is not, in general, qualified to determine competence to stand trial. We do conclude, however, that given the particular deficits of this defendant, [the expert's] ability to accurately evaluate [defendant's] competence, when compared with the experience and credentials of the other three experts, was lacking.
>
> [Id. at 551 (emphasis added).]

Here, we agree with the State that Barr lacked the necessary expertise to address the highly specialized subject of J.C.'s incompetency warranting reversal.

Here, the trial judge found J.C. was incompetent to stand trial, relying on Barr's testimony that J.C. is very distractible, his behavior is consistent with the description in his Individualized Education Plan (IEP),[1] and Barr encountered difficulty in administering tests to J.C. The trial judge found:

> [Barr] does not . . . believe that [J.C.] has the ability to understand consequences -- that his ability to understand consequences is severely limited. He does not have a capacity to make decisions for himself. He does not appreciate consequences in the opinion of [] Barr. He has stated [J.C.] can[]not give current basic information as to his life that would pertain to his own safety. He can[]not accurately assess direction in his life or consequences.

The trial judge concluded "I do not believe [J.C.] has an adequate ability or any ability literally to participate in a presentation of his own defense."

---

[1] In its reply brief, the State argues the IEP should not be considered on appeal because it was not admitted into evidence. We cannot consider documents not presented to the trial judge. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278 (2007). Because Barr considered the IEP in his reports and testified about it at the competency hearing, we incorporate the IEP into the record.

III.

The State first argues the trial judge should not have relied on Barr's testimony because Barr did not complete a competency evaluation of J.C. Evaluations of a defendant's competency to stand trial are governed by N.J.S.A. 2C:4-5, which provides that "[w]henever there is reason to doubt the defendant's fitness to proceed, the court may on motion by the prosecutor, the defendant or on its own motion, appoint at least one qualified psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant." N.J.S.A. 2C:4-5(a). The statute further provides:

> The report of the examination shall include at least the following: (1) a description of the nature of the examination; (2) a diagnosis of the mental condition of the defendant; (3) an opinion as to the defendant's capacity to understand the proceedings against him and to assist in his own defense.
>
> [N.J.S.A. 2C:4-5(b).]

"The standard report form for a competency evaluation requires the examiner to assess the criteria for competence to stand trial as set forth in N.J.S.A. 2C:4-4." Purnell, 394 N.J. Super. at 39.

Barr conducted two intellectual evaluations of J.C., and issued two reports. In his first report, dated March 31, 2018, Barr described the nature of the evaluation, as required by N.J.S.A. 2C:4-5(b)(1), reviewed J.C.'s IEP, and

administered the Bender Gestalt test and the Wechsler Abbreviated Scales of Intelligence. The first report noted J.C. was "very distractible" during his evaluation, "he only superficially discussed important facets of his life[,]" and he "was not able to provide basic information such as addresses." Based on his evaluation, Barr concluded:

> The results of this [i]ntellectual [e]valuation underscored the distinct limits of [J.C.'s] capacity to make accurate judgments or report salient aspects of his life. For sample, if [J.C.] were to become lost or wander away from the group home, it is reasonably unlikely that he could provide needed information to police as to how to contact important persons in his life.

Although Barr stated J.C.'s IEP included a classification of "Mild Intellectual Disability" and listed his prescription medications, Barr's report did not set forth an independent diagnosis of J.C.'s mental condition, and did not express an opinion as to J.C.'s "capacity to understand the proceedings against him and to assist in his own defense," as required by N.J.S.A. 2C:4-5(b)(3).

Barr's second report, dated June 6, 2018, similarly included the nature of the evaluation, noting J.C. was referred for a psychological-intellectual evaluation by his caseworker. In his second report, Barr stated, "[t]he purpose of this [p]sychological-[i]ntellectual [e]valuation was to provide information regarding personality and intellectual functioning, derive an understanding as to

[J.C.'s] grasp of the gravity of the situation confronting him, and outline potential treatment recommendations." Barr opined that J.C.'s "attention span remained shifting" and concluded:

> With regard to the serious legal problems confronting him, [J.C.] does not appreciate its gravity. Over two interviews, [J.C.] expressed concern about ending a session with disinterest, concern about eating, and interest in toys appropriate for someone half his age. [J.C.] does not grasp the concept of consequences, which did not impact his present behavior over the course of two interview sessions and attempts at formal testing.

Like Barr's first report, the second report did not include an independent diagnosis or an opinion as to J.C.'s capacity to understand the proceedings against him and assist in his own defense.[2] The report also did not assess the criteria listed in N.J.S.A. 2C:4-4, although it did note that J.C. had a "cognitive incapacity to grasp the gravity of the consequences confronting him."

At the competency hearing, Barr testified that neither of his evaluations of J.C. were evaluations for competency to stand trial and "at no point in either of [his reports] did [he] give an opinion about competency to stand trial[.]" Instead, Barr admitted his evaluations were "conducted to derive an

---

[2] Defendant argues Barr's reports provided an opinion as to J.C.'s capacity to assist in his own defense. Our review of the record reveals no such opinion is expressed in either report.

understanding of . . . [J.C.'s] intellectual functioning, [and] an understanding of his capacity to understand the gravity of the situation confronting him," and to offer potential treatment recommendations. He testified that the results indicated "we're dealing with someone who is very limited here, and [whose] understanding of consequences is also limited."

As to the issue of J.C.'s competency to stand trial, Barr testified that J.C. would not "be able to comprehend the information that -- is going back and forth during . . . [at] a hearing or a trial"; and "would not be able to . . . work with [defense counsel] or answer . . . questions or understand the gravity of it." Although Barr addressed the issue of J.C.'s ability to participate in an adequate presentation of his defense, see N.J.S.A. 2C:4-4(g), Barr did not address any of the other factors enumerated in N.J.S.A. 2C:4-4. Thus, as argued by the State, "[i]t is evident in Barr's description of the purpose of his evaluation, as well as in his failure to assess any of the relevant competency factors, that Barr did not complete an evaluation in order to determine J.C.'s competency to stand trial." We conclude Barr's evaluations did not meet the standards for a competency evaluation under N.J.S.A. 2C:4-4 and N.J.S.A. 2C:4-5, warranting reversal.[3]

---

[3] The parties may agree to stipulate to J.C.'s incompetency on remand.

IV.

The State next argues that due to Barr's admitted lack of knowledge and experience in the area of competency to stand trial, and because he did not perform a competency evaluation for J.C., his testimony and conclusions constitute a net opinion. Defense counsel counters that Barr's conclusions were not a net opinion because they were supported factually by his interviews with J.C., and his review of the IEP.

Pursuant to Rule 703, "an expert's opinion [must] be based on facts, data, or another expert's opinion, either perceived by or made known to the expert, at or before trial." State v. McNeil, 405 N.J. Super. 39, 49 (App. Div. 2009) (alteration in original) (quoting Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App. Div. 2002)). "The corollary of that rule is the net opinion rule, which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." State v. Townsend, 186 N.J. 473, 494 (2006). "Under the 'net opinion' rule, an opinion lacking in such foundation and consisting of bare conclusions unsupported by factual evidence is inadmissible." McNeil, 405 N.J. Super. at 49 (quoting Rosenberg, 352 N.J. Super. at 401). Thus, "[t]he rule requires the expert 'to give the why and

wherefore' of his or her opinion, rather than a mere conclusion." Id. at 49-50 (quoting Rosenberg, 352 N.J. Super. at 401).

Barr opined J.C. was "very limited"; "he did not appreciate consequences, [and] couldn't give basic information about his life, which would pertain to his own safety." Barr explained "[J.C.] lacked an appreciation for the gravity of the circumstances" and had "no conception of consequences due to his intellectual limitations." Saliently, J.C.'s score from the Wechsler Abbreviated Scales of Intelligence test "yielded an IQ in the [fifty-five to sixty] range," which "reflected functioning in the lower 2.5% of the population[,]" and "[d]uring his two interviews, attempts to discuss consequences with [J.C.] were met with his concerns about playing, leaving the office, and eating." Defense counsel argues Barr's objective, empirical testimony as to J.C., coupled with his interviews, provided "the why and wherefore" of his conclusions, but Barr lacks the expertise to opine as to J.C.'s competence to stand trial making this argument irrelevant to our conclusion.

V.

The State next argues the trial judge had insufficient evidence to determine J.C.'s competency to stand trial. In Purnell, we reversed a trial court's competency determination concluding "the evidence at the competency hearing

18

did not support the finding that the State proved defendant's competence to stand trial." 394 N.J Super. at 33. Here, the State further claims the trial judge failed to make any substantive findings as to the competency factors set forth in N.J.S.A. 2C:4-4(b)(2)(a) to (d). Defense counsel contends the trial judge properly considered Barr's reports and testimony, as well as defense counsel's certification concerning J.C.'s incompetence, and the trial judge was not required to make findings under N.J.S.A. 2C:4-4(b)(2)(a) to (d) regarding whether J.C. is "factually competent." We disagree.

Despite Barr's failure to conduct a competency evaluation and address the factors enumerated in N.J.S.A. 2C:4-4, the trial judge relied on Barr's opinions in finding that J.C. was incompetent to stand trial and dismissing the complaint with prejudice. After making findings as to the N.J.S.A. 2C:4-4(b)(2) factors, the trial judge concluded J.C. "does not have the mental capacity to appreciate . . . his presence in relation to time, place, and things[,]" N.J.S.A. 2C:4-4(b)(1); and his "elementary mental processes . . . are such that he can[]not comprehend what he is alleged to have done, nor what he . . . would have to do in order to assist in his defense," N.J.S.A. 2C:4-4(b)(2)(g). As to N.J.S.A. 2C:4-4(b)(2)(f), the trial judge noted this was a non-jury case, but nevertheless, he did not find J.C. "would comprehend the consequences of a guilty plea or that he is able to

knowingly, intelligently or voluntarily waive those rights[.]" The trial judge also found J.C. cannot "be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he chooses to testify and understands the right to testify[,]" N.J.S.A. 2C:4-4(b)(2)(e), and defense counsel "does not believe that [J.C.] meets that criteria."

Although the trial judge found that N.J.S.A. 2C:4-4(b)(2)(e) to (f) supported a finding of incompetency to stand trial, he stated he could not find J.C. does not understand he is in a court of law, N.J.S.A. 2C:4-4(b)(2)(a); there is a judge on the bench, N.J.S.A. 2C:4-4(b)(2)(b); there is a prosecutor present who will try to convict him of a criminal charge, N.J.S.A. 2C:4-4(b)(2)(c); and he has a lawyer who will undertake a defense for him, N.J.S.A. 2C:4-4(b)(2)(d). The judge nevertheless concluded J.C. was not competent to stand trial.

It is undisputed that "a defendant's attorney's representations concerning the competence of his client is a factor that must be considered" in evaluating a defendant's competency to stand trial. State v. Lambert, 275 N.J. Super. 125, 129 (App. Div. 1994). Here, defense counsel provided a certification to the trial judge stating he met with J.C. several times and "ha[s] had difficulty communicating with him and discussing the case with him." Defense counsel

certified: "My concern is that J.C. cannot decide whether to admit to the offense charged or go to trial and if the case goes to trial that he will be able to follow the trial and process the information that a trial would bring forth."

Although the trial judge properly relied on the certification, he did so only as to the factor enumerated in N.J.S.A. 2C:4-4(b)(2)(e), addressing whether J.C. "will be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he chooses to testify and understands the right not to testify." The balance of the trial judge's findings were made based on Barr's conclusions, and the judge's observations of J.C. during the hearing.[4]

Moreover, Barr testified he was unfamiliar with the legal standard for determining competency to stand trial and he was unaware of the standards to be followed by a psychologist when preparing an evaluation of competency to stand trial. Barr confirmed at the hearing that he did not apply the requisite standards in his evaluation of J.C.:

> Q     Right.   What standards must a psychologist follow when preparing a competency to stand trial evaluation?
>
> A     I do not know.

---

[4] The trial judge noted his observations of J.C. during the hearing, but J.C. did not testify.

Q      You do not know.  So, because you don't know those statutory requirements . . . you don't apply them to your evaluation; is that correct?

A      I -- not if I don't know them, then I couldn't apply them.

Barr clarified that neither of his evaluations were evaluations for competency to stand trial and the purpose of his evaluations was not to determine competency to stand trial.[5]

"It is axiomatic that an expert's opinion is only as strong as the facts on which it rests."  M.J.K., 369 N.J. Super. at 550.  Here, Barr's findings were limited to J.C.'s intellectual capacity generally, his understanding (or lack thereof) of consequences, his distractibility, and his shifting attention span.  The trial judge nevertheless found Barr's opinions supported a conclusion that J.C. does not have the mental capacity to appreciate his presence in relation to time, place and things; he cannot comprehend the consequences of a guilty plea; and he does not have the mental capacity to assist in his defense.

"The test for competence to stand trial arises from our basic concepts of due process."  Id. at 547.  "As the United States Supreme Court has held, a

_____

[5]  The defense argues Dr. Barr was "aware of the context of his evaluation of J.C.," but, Dr. Barr testified he "didn't know [the evaluation] was going to ultimately be for competency."

defendant tried or convicted while incompetent to stand trial has been deprived of his due process right to a fair trial." Ibid. "Consequently, a court must hold a competency hearing where the evidence raises a bona fide doubt as to a defendant's competence." Ibid. The State then "bears the burden of establishing competence by a preponderance of the evidence." Ibid.

"The minimum requirements for determining whether a defendant is competent to stand trial were first established by the United States Supreme Court in Dusky v. United States, 362 U.S. 402, 402 (1960)." Ibid. "The Court defined the test as 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." State v. Purnell, 394 N.J. Super. 28, 47 (App. Div. 2007) (alteration in original) (quoting Dusky, 362 U.S. at 402). "In New Jersey, the test for competence to stand trial on criminal charges has been codified in N.J.S.A. 2C:4-4[.]" M.J.K., 369 N.J. Super. at 547-48. This statute "has replaced the generalizations of prior case law with more precise and detailed standards for determining a defendant's competency[.]" Moya, 329 N.J. Super. at 506. N.J.S.A. 2C:4-4 provides as follows:

> a. No person who lacks capacity to understand the proceedings against him or to assist in his own defense

shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures.

b. A person shall be considered mentally competent to stand trial on criminal charges if the proofs shall establish:

(1) That the defendant has the mental capacity to appreciate his presence in relation to time, place and things; and

(2) That his elementary mental processes are such that he comprehends:

(a) That he is in a court of justice charged with a criminal offense;

(b) That there is a judge on the bench;

(c) That there is a prosecutor present who will try to convict him of a criminal charge;

(d) That he has a lawyer who will undertake to defend him against that charge;

(e) That he will be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he chooses to testify and understands the right not to testify;

(f) That there is or may be a jury present to pass upon evidence adduced as to guilt or innocence of such charge or, that if he should choose to enter into plea negotiations or to plead guilty, that he comprehend the consequences of a guilty plea and that he be able to knowingly, intelligently,

24

and voluntarily waive those rights which are waived upon such entry of a guilty plea; and

(g) That he has the ability to participate in an adequate presentation of his defense.

We have found "the competency statutes of the criminal code, specifically N.J.S.A. 2C:4-4 to -6, apply to juveniles." State in Interest of N.C., 453 N.J. Super. 449, 455 (App. Div. 2018).

Defense counsel argues the trial judge was not required to make findings as to the factors in N.J.S.A. 2C:4-4(a) to (d) because "the standards for a finding of factual competence were designed to address the legal competence of adults[.]" In support of this argument, defense counsel cites to a recent study, which measured the competency to stand trial of adolescents and young adults and found "adolescents aged [fifteen] and younger . . . performed more poorly tha[n] the young adults generally[.]" But our jurisprudence expressly enumerates the procedures for establishing competency to stand trial, which are "codified in the criminal code at N.J.S.A. 2C:4-4 to -6 . . . [and] necessarily apply to juveniles" as well as adults. N.C., 453 N.J. Super. at 457 (emphasis added).

"We have previously described our role in reviewing the decisions of a trial judge respecting competence as 'typically, and properly, highly

deferential.'" M.J.K., 369 N.J. Super. at 548 (quoting Moya, 329 N.J. Super. at 506). "Moreover, we have recognized that the decision regarding competence is for the judge and not for the experts to make." Ibid. "Nevertheless, a determination of competency cannot be sustained in the absence of sufficient supporting evidence." Purnell, 394 N.J. Super. at 50. Furthermore, "particularly where crimes of violence are charged, those judicial determinations should be informed by a comprehensive factual record that provides a basis for the N.J.S.A. 2C:4-4 determination[.]" Moya, 329 N.J. Super. at 506.

Here, the trial judge was not provided with qualified expert testimony to make appropriate findings as to more than half of the factors required for a determination of competency under N.J.S.A. 2C:4-4. Notwithstanding our highly deferential standard of review, we reverse the trial judge's competency determination, and remand for a proper competency evaluation to be performed by a qualified expert and for a new competency hearing to be conducted addressing the factors set forth in N.J.S.A. 2C:4-4 and N.J.S.A. 2C:4-5. As stated above, the parties may agree to stipulate to J.C.'s incompetence on remand.

## VI.

The State next argues that the trial judge improperly dismissed J.C.'s charges with prejudice, rather than holding the charges in abeyance, because the judge failed to consider the factors set forth in N.J.S.A. 2C:4-6. Defense counsel counters that the trial judge performed the appropriate N.J.S.A. 2C:4-6(c) analysis and determined the charges should be dismissed with prejudice because holding the charges in abeyance would constitute a constitutionally significant injury. Because both parties agree this issue should be reviewed for plain error, we will address it.

"When a defendant fails to object to an error or raise an issue before the trial court, we review for plain error. We may reverse on the basis of unchallenged error only if the error was 'clearly capable of producing an unjust result.'" State v. Ross, 229 N.J. 389, 407 (2017) (citation omitted) (quoting R. 2:10-2). "The possibility of an unjust result must be 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" Ibid. (quoting State v. Williams, 168 N.J. 323, 336 (2001)). "A defendant who does not raise an issue before a trial court bears the burden of establishing that the trial court's actions constituted plain error." Ibid. "A defendant assumes this burden because 'to rerun a trial when the error could

easily have been cured on request, would reward the litigant who suffers an error for tactical advantage either in the trial or on appeal.'" Ibid. (quoting State v. Weston, 222 N.J. 277, 294-95 (2015)).

"When a court determines that a defendant lacks fitness to proceed and has not regained fitness within three months, it must consider whether the charges should be dismissed with prejudice or held in abeyance." Moya, 329 N.J. Super. at 510. Our trial courts are guided by N.J.S.A. 2C:4-6(c) in determining whether charges against a defendant who has been deemed incompetent to stand trial should be held in abeyance or dismissed. See id. at 510-11. N.J.S.A. 2C:4-6(c) provides, in part, as follows:

> There shall be a presumption that charges against a defendant who is not competent to proceed shall be held in abeyance. The presumption can be overcome only if the court determines, using the factors set forth in this subsection, that continuing the criminal prosecution under the particular circumstances of the case would constitute a constitutionally significant injury to the defendant attributable to undue delay in being brought to trial.
>
> In determining whether the charges shall be held in abeyance or dismissed, the court shall weigh the following factors: the defendant's prospects for regaining competency; the period of time during which the defendant has remained incompetent; the nature and extent of the defendant's institutionalization; the nature and gravity of the crimes charged; the effects of delay on the prosecution; the effects of delay on the

defendant, including any likelihood of prejudice to the defendant in the trial arising out of the delay; and the public interest in prosecuting the charges.

The statute expressly creates a presumption that charges should be held in abeyance and the "presumption is overcome only upon a determination, applying the factors noted above, that in the particular circumstances of the case, the undue delay creates a constitutionally significant injury to the defendant." Moya, 329 N.J. Super. at 511.

Here, the trial judge acknowledged "the presumption . . . can be overcome only if the [c]ourt determines . . . that continuing the criminal prosecution under the particular circumstances of this case would constitute a [c]onstitutionally significant injury to the defendant attributable to undue delay in being brought to trial." After analyzing the factors set forth in N.J.S.A. 2C:4-6(c), the trial judge concluded "justice, and fairness, and equity in regard to this particular circumstance justifies that this matter be dismissed at this time[.]" The State concedes the trial judge considered each of the statutory factors, but it contends the court's analysis was fatally flawed and would "set[] a dangerous precedent[.]"

As to the first factor, the trial judge concluded, based upon Barr's opinion, that J.C.'s "prospects for -- regaining competency are very small" and "it would

take nothing short of a miracle[.]" The State challenges this determination, arguing Barr's testimony "was [a] net opinion and an insufficient basis upon which to make such a finding." Defense counsel claims the conclusion was based on sufficient, credible evidence, including the trial judge's personal observations of J.C. in the courtroom. Notwithstanding our deferential standard of review, we disagree with the trial judge's ruling because Barr did not possess the expertise to make a determination as to J.C.'s competency, and therefore, the trial judge committed plain error by relying on Barr's opinion relative to J.C.'s prospects for regaining competency.

As to the period of time during which J.C. has remained incompetent, the trial judge found J.C. "has suffered from the conditions he suffers from . . . for all of the twelve years of his life[,]" but as argued by the State, "[t]he trial court did not cite to any evidence or testimony to support this determination." Although defendant argues that the conclusion is supported by J.P.'s IEP, the IEP indicates that prior to age five, J.C. "achieved developmental milestones at age expectation," and he was referred to special education services while he was in kindergarten "under the classification '[c]ommunication [i]mpaired.'" The

court found that the third factor, the nature and extent of J.C.'s institutionalizations, is not applicable here, and the State agrees.[6]

As to the fourth factor, the trial judge concluded the nature and gravity of the crime charged "is serious . . . . [A]nd can harm someone for a lifetime, and may have here." The State does not challenge this determination, but argues that "the trial court did not make a true finding as to how the factor weighed[,]" and defense counsel asserts "[t]he judge unquestionably regard[ed] aggravated sexual assault . . . as grave[.]" The record reveals the trial judge clearly and unequivocally stated "the nature and gravity of the crime here is serious. The State has every right to prosecute this crime."

As to the fifth and sixth factors, the trial judge noted the prosecution will have an opportunity to prosecute this case in the future; but, if the matter was delayed, J.C. "would have to pay for his crime years in the future after working hard to get to the point where he even understood what was happening to him." The trial judge concluded: "I don't believe there would be any prejudice to the defendant other tha[n] the unfairness of punishing him years from now after he works so hard to get to the point where he can aid in his defense." The State

_____

[6] The trial court noted J.C. was being housed "in a facility away from his family[.]"

argues these findings did not address the "availability of witnesses, preservation of evidence, and the extent to which the delay may have resulted from causes attributable to the defense[.]"

"In weighing the effects of delay on the defendants and prosecution, the judge should consider availability of witnesses, preservation of evidence, and the extent to which the delay may have resulted from causes attributable to the defense[.]" Moya, 329 N.J. Super. at 515. The trial judge acknowledged these factors, noting:

> [The] [p]rosecutor will be able to proceed. The eight year old will be older and will have to relive all of this at some time in the future and talk about what his brother did to him when he was eight years of age, or whatever other witnesses there are that there may have been admissions made to and/or could testify as to what the children said to them.

As to the final factor, the trial judge concluded:

> Certainly in today's society an eight year old who is allegedly sexually assaulted should have every right in making sure that charges are heard against them. Certainly a twelve year old in the condition of this twelve year old though needs to be able to participate in his defense, and I do not see him being able to do so at any time in the reasonable future.

Because the trial judge's decision to dismiss the charges against J.C. with prejudice, rather than hold them in abeyance was based on Barr's unqualified

opinion that J.C. would likely not regain his competency, we determine the dismissal constitutes plain error warranting reversal.

## VII.

Finally, the State argues the trial judge erred in dismissing J.C.'s charges with prejudice without making a determination as to J.C.'s dangerousness to himself or others, and the matter must be remanded for an evaluation of J.C.'s dangerousness. We agree.[7]

When a defendant is found to be incompetent to stand trial, the court must determine "whether such a defendant is so dangerous to himself or others as to require institutionalization or whether placement in an out-patient setting or release is appropriate." Id. at 511; see N.J.S.A. 2C:4-6(b) ("If the court determines that the defendant lacks fitness to proceed . . . the court may commit him to the custody of the Commission of Human Services to be placed in an appropriate institution if it is found that the defendant is so dangerous to himself or others as to require institutionalization[.]").

---

[7] Defense counsel argues the State's argument regarding J.C.'s dangerousness was not raised below. We have acknowledged that whether the defendant is a danger to himself or others is "a prime issue for judicial inquiry" in the application of N.J.S.A. 2C:4-6. Moya, 329 N.J. Super. at 511. Moreover, as noted in the State's reply brief, the State objected to Barr rendering an opinion as to J.C.'s dangerousness at the competency hearing, thereby bringing the issue to the trial judge's attention.

A-1613-18T2

We held that, in enacting N.J.S.A. 2C:4-6(b), the Legislature "contemplate[d] that an inquiry respecting the crimes charged may be appropriate not only with respect to the issue of competency but to the issue of danger which must be resolved by the trial judge." Moya, 329 N.J. Super. at 511. "The determination of dangerousness involves prediction of a defendant's future conduct rather than mere characterization of his demonstrated past conduct." Id. at 513. "However past conduct is important evidence as to probable future conduct and should be given substantial weight in a dangerousness determination." Ibid. "[P]articularly where crimes of violence are charged, those judicial determinations should be informed by a comprehensive factual record that provides a basis . . . for a N.J.S.A. 2C:4-6 conclusion that a defendant may be safely and unconditionally released." Id. at 506.

Here, the trial judge failed to make any findings as to the danger J.C. might pose to himself or others. See R. 1:7-4(a). Moreover, both parties agree that the record suggests J.C. has a history of "potentially risky and unpredictable conduct[,]" warranting such a determination.

In summary, we reverse the trial judge's determination that J.C. is incompetent to stand trial and we remand the matter for a new competency

A-1613-18T2

evaluation and hearing under N.J.S.A. 2C:4-4 to -6, unless the parties stipulate to J.C.'s incompetency on remand. We reverse the order dismissing the complaint with prejudice for the reasons expressed herein and for consideration by the trial judge on remand. The trial judge shall also determine whether J.C. poses a danger to himself and others.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

35

A-1613-18T2